UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GIRVANY LACROIX,

    Petitioner,

v.                                                                Case No. 4:15cv140/RH/CJK

LORETTA LYNCH,[1] et al.,

    Respondents.
_____/

REPORT AND RECOMMENDATION

This cause is before the court on Girvany Lacroix's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 6). Respondents filed a response to the petition (doc. 14) and petitioner filed a reply to the response (doc. 16). After reviewing petitioner's reply, the undersigned ordered respondents to file a memorandum addressing petitioner's claim that his detention during removal proceedings is unlawful. (Doc. 17). Respondents have filed the requested memorandum. (Doc. 18). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, the undersigned concludes the petition

---

[1] Loretta Lynch succeeded Eric Holder as the Attorney General of the United States, and is automatically substituted as a respondent. Fed. R. Civ. P. 25(d).

should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Haiti who entered the United States via Miami, Florida, on May 21, 1993, as a lawful permanent resident. (Doc. 14-1, p. 2).[2] On October 9, 2012, petitioner was convicted of attempted sexual battery in Lee County, Florida, and sentenced to sixty months of probation. (Doc. 16, p. 2). Petitioner asserts U.S. Immigration and Customs Enforcement ("ICE") took him into custody as a deportable alien on October 12, 2012; he has remained in ICE custody since that date.[3] (*Id.*).

On November 7, 2013, an Immigration Judge ("IJ") ordered petitioner removed from the United States to Haiti. (Doc. 18-1, p. 2-22). The IJ found petitioner was removable because his state conviction for attempted sexual battery qualified as an aggravated felony under immigration law. (*Id.*, p. 2-3); *see* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Because the IJ found petitioner's conviction for

---

[2] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

[3] Respondents assert petitioner was issued a Notice to Appear in Removal Proceedings on October 11, 2012, but was not taken into ICE custody until December 31, 2012. (Doc. 14-1, p. 2).

Case No. 4:15cv140/RH/CJK

attempted sexual battery was also a "particularly serious crime," the IJ concluded petitioner was ineligible for withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA").[4] (*Id.*, p. 12-14). The IJ also found petitioner was not entitled to withholding or deferral of removal under the United Nations Convention Against Torture because he "failed to meet his burden of establishing that it is more likely than not that he faces torture if returned to the country of Haiti." (*Id.*, p. 15); *see* 8 C.F.R. § 1208.16(c)(2) (Under the Convention Against Torture, "[t]he burden of proof is on the applicant for withholding of removal under this paragraph to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.").

On December 5, 2013, petitioner appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). (Doc. 14-1, p. 2). On April 25, 2014, the BIA remanded petitioner's case to the IJ because the IJ's November 7, 2013 decision did "not set forth his reasoning under the categorical or modified categorical approach

---

[4] Under § 241(b)(3)(A) of the INA (codified at 8 U.S.C. § 1231), "[a]n alien seeking withholding of removal under the INA bears the burden of showing that it is 'more likely than not' that removal will subject him to persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Diego Pedro v. U.S. Att'y Gen.*, 324 F. App'x 791, 793 (11th Cir. 2009) (*citing Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007)). Pursuant to 8 U.S.C. § 1231(b)(3)(B)(ii), however, an alien is not eligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) if the alien has been convicted of a "particularly serious crime." *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1141 n.2 (11th Cir. 2010).

Case No. 4:15cv140/RH/CJK

explaining his determination that [petitioner's] conviction for attempted sexual battery . . . is an aggravated felony[.]" (Doc. 18-2, p. 2-3). On June 13, 2014, the IJ again determined petitioner was subject to removal. (Doc. 14-1, p. 5-10). Petitioner filed a second appeal with the BIA on June 18, 2014. (*Id.*, p. 3). Both petitioner and the Department of Homeland Security were given until July 9, 2014, to submit briefs to the BIA. (Doc. 18-3, p. 2). Petitioner subsequently requested additional time to submit a brief. (Doc. 18-4, p. 2). Petitioner's request was granted and the deadline for both parties to submit briefs was extended to July 30, 2014. (*Id.*). The government filed a motion for summary affirmance of the IJ's decision on July 14, 2014. (Doc. 18, p. 3). Over ten months later, on June 18, 2015, a lawyer accepted petitioner's case through the BIA's Pro Bono Project and filed a notice of appearance on petitioner's behalf. (Doc. 18-6, p. 2-3). Because petitioner was no longer proceeding *pro se*, the BIA established a new briefing deadline of July 14, 2015. (Doc. 18-7, p. 2). Petitioner's counsel then requested a twenty-one day extension of time in which to file the brief. (*Id.*, p. 5-7). The request was granted and the briefing deadline was extended to August 4, 2015. (Doc. 18-8, p. 2). Petitioner's appeal currently remains pending before the BIA. (Doc. 18, p. 3).

## DISCUSSION

Petitioner claims the length of his pre-removal detention–which has now lasted over three years–is unreasonable and violates the Due Process Clause of the Fifth Amendment. Petitioner argues he is entitled to a bond hearing to assess his risk of flight and potential danger to the community.

Statutory Background

"When the government seeks removal of an alien, an [Immigration Judge] can ordinarily conduct a bail hearing to decide whether the alien should be released or imprisoned while proceedings are pending." *Lora v. Shanahan*, 804 F.3d 601, 608 (2d Cir. 2015). Petitioner, however, is being held pursuant to 8 U.S.C. § 1226(c), which provides that "[t]he Attorney General *shall* take into custody any alien who is deportable by reason of having committed an offense covered in section . . . 1227(a)(2)(A)(iii)[.]"[5] 8 U.S.C. § 1226(c)(1)(B) (emphasis added). "Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens–including those convicted of an aggravated felony." *Demore v. Kim*, 538 U.S.

---

[5] Upon being taken into ICE custody, an alien may assert he is not subject to mandatory detention under § 1226(c) and request an immediate "*Joseph*" hearing. *Demore v. Kim*, 538 U.S. 510, 514 n.3, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). "At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [ICE] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Id.*; *see also Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). The record does not reflect that petitioner requested a *Joseph* hearing.

510, 517-18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). "Congress adopted section 1226(c) in an effort to strengthen and streamline the process of removing deportable criminal aliens 'against a backdrop of wholesale failure by the INS[6] to deal with increasing rates of criminal activity by aliens' and 'evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their removal proceedings.'" *Lora*, 804 F.3d at 604 n.5 (*quoting Demore*, 538 U.S. at 518-19); *see also Demore*, 538 U.S. at 521 ("Some studies presented to Congress suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country.").

## *Demore v. Kim*

In *Demore v. Kim*, the U.S. Supreme Court addressed the constitutionality of mandatory detention under § 1226(c). Kim–a deportable criminal alien–"argued that his detention under § 1226(c) violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Demore*, 538

---

[6] "On March 1, 2003, the [Immigration and Naturalization Service] was dissolved as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security." *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 944 n.1 (9th Cir. 2008) (*citing* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205.)

Case No. 4:15cv140/RH/CJK

U.S. at 514. The Court rejected Kim's argument, holding mandatory pre-removal detention under §1226(c) did not violate the Due Process Clause of the Fifth Amendment. *Id.* at 513. The Court found that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as [Kim] be detained for the brief period necessary for their removal proceedings." *Id*. The Court emphasized that detention during removal proceedings "had a definite termination point" and was typically of short duration.[7] *Id.* at 528-31. Although Kim's six-month detention exceeded the average length of detention under § 1226(c), the Court nevertheless found it constitutional. *Id*. at 530-31 (Kim "was detained for somewhat longer than the average–spending six months in INS custody prior to the District Court's order granting habeas relief, but [Kim] himself had requested a continuance of his removal hearing."). In a concurring opinion, Justice Kennedy suggested an alien subject to mandatory detention under § 1226(c) could be entitled

---

[7] The Court provided the following statistics:

The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter.

*Demore*, 538 U.S. at 529.

Case No. 4:15cv140/RH/CJK

to a bond hearing in some circumstances:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. That is not a proper inference, however, either from the statutory scheme itself or from the circumstances of this case.

*Id.* at 532-33 (Kennedy, J., concurring) (citation omitted).

After *Demore*

Four U.S. Courts of Appeal have addressed the question left unanswered by *Demore*–when, or under what circumstances, does an alien's mandatory pre-removal detention become unconstitutional?[8] In *Diop v. ICE/Homeland Sec.*, the Third Circuit held that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the

---

[8] The Eleventh Circuit has not considered the constitutionality of 8 U.S.C. § 1226(c) following *Demore*. The undersigned recognizes that opinions from other circuits are not binding on this court. Nevertheless, opinions from other circuits may serve as persuasive authority.

Case No. 4:15cv140/RH/CJK

community."[9] 656 F.3d 221, 231 (3d Cir. 2011). The court noted that "the constitutionality of [mandatory detention] is a function of the length of the detention." *Id.* at 232. Declining "to establish a universal point at which detention will always be considered unreasonable," the court found the determination of reasonableness "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances." *Id*. at 233. Accordingly, the court noted "the reasonableness determination must take into account a given individual detainee's need for more or less time" and "errors in the proceedings that cause unnecessary delay." *Id*. at 234. In light of the Immigration Judge's "numerous errors" and the "Government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained," the Third Circuit concluded Diop's 35-month

---

[9] In a subsequent case, the Third Circuit further explained this conclusion:

> In circumstances like those in *Demore*, it is not arbitrary or capricious to use a presumption that the alien will flee or be dangerous in the case of every detainee for the purpose of eliminating the need for bond hearings, because the cost of their short-term deprivation of liberty is outweighed by the need or benefit of detaining this whole group to achieve the goals of the statute. The relative weight of the competing interests in cases like these favor the Government's position. Yet, due process requires us to recognize that, at a certain point–which may differ case by case–the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous. At this tipping point, the Government can no longer defend the detention against claims that it is arbitrary or capricious by presuming flight and dangerousness: more is needed to justify the detention as necessary to achieve the goals of the statute.

*Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 474-75 (3d Cir. 2015).

Case No. 4:15cv140/RH/CJK

detention without a bond hearing was unconstitutional. *Id*.

Similarly, in *Ly v. Hansen*, the Sixth Circuit declined to adopt a bright-line rule for determining when pre-removal detention without a bond hearing becomes unconstitutional. 351 F.3d 263, 271 (6th Cir. 2003) ("A bright-line time limitation . . . would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant."). Instead the court held that "the INS may detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings." *Id.* at 268. To determine the reasonableness of an alien's detention, the Sixth Circuit found that "courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.* at 271. The Sixth Circuit cautioned that "courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Id.* at 272 ("Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections

and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release."). The court, however, also noted that:

> appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id*. at 272.

Addressing the facts of the case before it, the Sixth Circuit found Ly's "incarceration for 18 months pending removal proceedings [was] unreasonable." *Id.* at 270. The court's decision was influenced by the fact that "actual removal of Ly from the United States was never a possibility" because, at the time, there was "no repatriation agreement between the United States and Vietnam." *Ly*, 351 F.3d at 265 n.1; *see also id*. at 271-72 ("Because Ly was not removable, a year-and-a-half imprisonment awaiting removal proceedings was especially unreasonable.").

In contrast to the fact-specific inquiries undertaken in the Third and Sixth Circuits, the Second and Ninth Circuits have adopted bright-line rules concerning alien detention under § 1226(c). In the Ninth Circuit, aliens detained for longer than

sixth months under § 1226(c), are entitled to a bond hearing. *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-81 (9th Cir. 2015) (affirming district court's decision to grant permanent injunction requiring bond hearings after six months of detention). In *Rodriguez v. Robbins*, the Ninth Circuit summarized its reasoning for requiring the bond hearing:

> [T]he prolonged detention of an alien [under § 1226(c) ] without an individualized determination of his dangerousness or flight risk would be constitutionally doubtful. To avoid these constitutional concerns, § 1226(c)'s mandatory language must be construed to contain an implicit reasonable time limitation. Accordingly, at the six-month mark, when detention becomes prolonged, § 1226(c) becomes inapplicable, and the Attorney General's detention authority rests with § 1226(a). Under [*Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008)], those detainees are then entitled to a bond hearing.

*Rodriguez*, 804 F.3d at 1079 (citations and quotations omitted).

The Second Circuit has followed the Ninth Circuit's bright-line approach. In *Lora v. Shanahan*, the Second Circuit found that, "in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation." 804 F.3d 601, 614 (2d Cir. 2015). The Second Circuit held that, "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id*. at 616. The court

reasoned:

> We believe that, considering the relevant Supreme Court precedent, the pervasive confusion over what constitutes a 'reasonable' length of time that an immigrant can be detained without a bail hearing, the current immigration backlog and the disastrous impact of mandatory detention on the lives of immigrants who are neither a flight risk nor dangerous, the interests at stake in this Circuit are best served by the bright-line approach.

*Id*. at 614-15.

Mr. Lacroix's Petition

In the present case, the government has raised several arguments in opposition to Mr. Lacroix's petition. The government first claims "that the reasoning of the Supreme Court's decision in *Demore* forecloses the arguments Petitioner makes here." (Doc. 18, p. 7). To be sure, the *Demore* Court did hold § 1226(c) was facially constitutional; the Court, however, also repeatedly emphasized the brief nature of pre-removal detention. *See Demore*, 538 U.S. at 531 (emphasis added) ("Congress . . . may require that persons such as [Kim] be detained for the *brief period* necessary for their removal proceedings."); *id*. at 530 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."). Mr. Lacroix's detention during removal proceedings have been anything

but brief. While the alien in *Demore* was detained for slightly longer than six months, Lacroix has been detained for over *three years*–a significantly longer period of time. Furthermore, no circuit court addressing a challenge to § 1226(c) has read *Demore* as permitting the indefinite detention of an alien during removal proceedings. *See Lora*, 804 F.3d 601, 614 ("[W]hile all circuits agree that section 1226(c) includes some 'reasonable' limit on the amount of time that an individual can be detained without a bail hearing, courts remain divided on how to determine reasonableness."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006) ("There is no indication anywhere in *Demore* that the [Supreme] Court would countenance an indefinite detention."). The government's argument concerning the scope of the holding in *Demore* must be rejected.

The government next argues that petitioner's ongoing detention is not unreasonable because "[p]etitioner has undertaken steps to avail himself of virtually every conceivable remedy at the administrative level, including seeking asylum, filing multiple appeals with the BIA, retaining counsel, and filing numerous briefing extension requests." (Doc. 18, p. 8). Going on, the government claims: (1) "a significant portion of [petitioner's] detention] appears to be solely attributable to either Petitioner's failure to file his brief before the BIA, or to continuances sought

by Petitioner before the BIA; and (2) "[a]ny delays on the part of the BIA are attributable in part to the fact that the BIA has been lenient to Petitioner and has granted all of his extension requests." (*Id.*). Noting that "a rule requiring release based solely on detention length would create incentives for aliens to delay removal proceedings and burden the system with frivolous claims," the government contends petitioner's continued detention is constitutional. (*Id.*).

In *Demore*, the Supreme Court acknowledged that an alien's actions during removal proceedings could affect the reasonableness of his detention. *See Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average–spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing."). Here, the resolution of Lacroix's removal proceedings has been delayed in part by his requests for briefing extensions and his appeal of the IJ's orders. The record also reflects, however, an almost 11-month period during which the BIA took no action on Lacroix's second appeal. Lacroix's brief to the BIA for his second appeal was due July 30, 2014. (Doc. 18-4, p. 2). The government does not indicate Lacroix failed to file a brief at that time or the appeal was otherwise not ripe

for disposition.[10]  For over ten months, however, nothing happened with the appeal. *See Ly*, 351 F.3d at 272 ("The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision."). Finally, on June 18, 2015, a lawyer with the National Immigrant Justice Center filed a notice of appearance on behalf of the petitioner, which resulted in the issuance of a new briefing schedule.  (Doc. 18-6, p. 2; doc. 18-7, p. 2)

Petitioner's removal proceedings were also delayed as a result of the IJ's failure to adequately explain the classification of petitioner's state conviction as an aggravated felony.  Petitioner's appeal of the IJ's November 7, 2013 removal order was successful; the BIA remanded the case to the IJ with instructions to set forth the reasoning for designating petitioner's conviction as an aggravated felony.  (Doc. 18-2); *see Diop*, 656 F.3d at 234 ("[W]e also conclude that reasonableness must take into account errors in the proceedings that cause unnecessary delay.").

Thus, while Lacroix's choices have undoubtedly affected the length of his removal proceedings, circumstances beyond his control also contributed to him being detained for three years without an individualized assessment as to his risk of flight

---

[10] The BIA notice extending the briefing deadline to July 30, 2014, specifically stated, "If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal." (Doc. 18-4, p. 2).

Case No. 4:15cv140/RH/CJK

or dangerousness. Moreover, neither a successful BIA appeal, nor obtaining pro bono counsel should be seen as a waiver of one's right to due process. Here, considering the specific circumstances surrounding petitioner's removal proceedings and the sheer length of his detention, petitioner's continued detention without a bond hearing is unreasonable and of doubtful constitutionality. *See Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Due Process] Clause protects."). Although *Demore* held that mandatory detention of aliens like petitioner is constitutional "for the brief period necessary for their removal proceedings," 538 at 513, petitioner's removal proceedings have not been brief. *See Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 474 (3d Cir. 2015) ("[T]he Court in *Demore* expected the detentions under section 1226(c) to be brief, and . . . this expectation was key to their conclusion that the law complied with due process."). Thus, "the authorities must make an individualized inquiry into whether detention is still necessary to fulfill [§ 1226(c)'s] purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop*, 656 F.3d at 231. This court should not, however, adopt the bright-line test employed by

the Second and Ninth Circuits.

Relief

In order to determine whether Lacroix's continued detention is necessary to ensure the safety of the community and his appearance at his removal proceedings, he should be provided with a bond hearing. Both the Second and Ninth Circuits have held that "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616 (*citing Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013)); *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (*citing Addington v. Texas*, 441 U.S. 418, 427, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)) ("Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'–deprivation of liberty–is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection."). The undersigned recommends that this court adopt the Second and Ninth Circuits' approach concerning the government's burden of proof at the bond hearing.

Accordingly, it is respectfully RECOMMENDED:

That the writ of habeas corpus be GRANTED. Under the terms of the writ, the

respondents shall, within **forty-five (45) days**, provide petitioner with a hearing before an Immigration Judge with the power to grant him bail.  To justify petitioner's continued detention, the government must establish at the hearing, by clear and convincing evidence, that petitioner is either a flight risk or will be a danger to the community, as these terms are utilized in the Bail Reform Act.

    At Pensacola, Florida, this 7th day of January, 2016.


       /s/ *Charles J. Kahn, Jr.*
       **CHARLES J. KAHN, JR.**
       **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.